UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| Timothy M., <br><br>     Plaintiff, <br><br>     v. <br><br> Commissioner of Social Security, <br><br>     Defendant | Civil Action No. 2:20–cv–200–kjd |

**OPINION AND ORDER**
(Docs. 20, 21)

    Plaintiff Timothy M. brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security denying his application for Supplemental Security Income.  Pending before the Court are Plaintiff's motion to reverse the Commissioner's decision (Doc. 20), and the Commissioner's motion to affirm the same (Doc. 21).  For the reasons stated below, Plaintiff's Motion is DENIED, and the Commissioner's Motion is GRANTED.

**Background**

    Plaintiff was 51 years old on his alleged disability onset date of April 16, 2018.  (AR 22, 173.)  He graduated high school in 1985 (AR 190), and attended "hair school for a two-year degree" (AR 54).  While he appears to have no earning records from 2003 to 2018 (*see* AR 190), Plaintiff testified that he has worked as a self-employed hair stylist and briefly performed part-time cleaning work for a temporary employment agency (AR 55–56, 206).  Plaintiff has a history of headaches since childhood (AR 557), and regularly experienced approximately two migraines monthly before 2004.  (AR 213).  In that year, Plaintiff suffered a mild traumatic brain injury in

a car accident. (AR 401, 557.) He also underwent surgery on his nose in 2004 to relieve his deviated septum. (AR 62, 389, 557.) Plaintiff primarily attributes his increased headaches to this surgery (AR 62, 222), stating to a provider that he "wishe[s] he [had] died in surgery" (AR 365; *see* AR 222, 225). He claims that the frequency of his headaches has since ranged from 12 days per month (AR 213, 224, 240, 557), to 18 days per month (AR 548, 600). Plaintiff has rated these headaches as ten out of ten in severity and has stated that on occasion his "migraine attacks" can span two days. (AR 552.)

Plaintiff testified that various environmental stimuli cause these migraines, including perfume, deodorant, cigarette smoke, pollen, dust, barometric shifts, humidity, and the cold. (AR 59.) When Plaintiff experiences one of these migraines, he feels as though "somebody is pounding in the back of [his] head with a mallet," accompanied by "nausea that doesn't quit" and "power vomiting." (AR 62; *see* AR 225.) To avoid environmental triggers, he "pack[s] [his] nose" with toilet paper and saline solution or purified water "so the air doesn't go through [his] nose" whenever he leaves his bedroom, walks outside, or rides his bike. (AR 60, 61.) He attempted to work as a hairdresser several years ago, but stopped in 2016 because the nearby salon's strong chemicals caused migraines. (AR 55.) Since then, he has not sought other employment for "fear of . . . getting [a] migraine" at work. (AR 58, 59.)

In addition to migraines, Plaintiff has been diagnosed with chronic sinusitis,[1] possible neurogenic rhinitis,[2] allergies, chronic depression, and anxiety. (AR 369, 394, 592, 606, 607,

---

[1] Sinusitis is the "[i]nflammation of the mucous membrane of any sinus, especially the paranasal." *Sinusitis*, Stedmans Medical Dictionary (28th ed. 2006), Westlaw 823530.

[2] *Neurogenic*, Stedmans Medical Dictionary (28th ed. 2006), Westlaw 600810 (defining "neurogenic" as "[o]riginating in, starting from, or caused by, the nervous system or nerve impulses"); *Rhinitis*, Stedmans Medical Dictionary (28th ed. 2006), Westlaw 782260 (defining "rhinitis" as the "[i]nflammation of the nasal mucous membrane").

632.)  In both his initial and updated Function Reports, he stated that his daily activities include going to the gym three times a week (AR 219, 245), where he completes two-hour-long full-body workouts (AR 245; *see* AR 401).  While he goes outside "[d]aily" (AR 218, 244), that time is "limited" (AR 218).  Plaintiff reports riding his bike "[d]aily" (AR 219), and also reports walking, riding in a car, and using public transportation (AR 218, 244).

On June 27, 2018, Plaintiff filed an application for Title XVI Supplemental Security Income Benefits, claiming a disability onset date of April 16, 2018.  (AR 173.)  In his application, Plaintiff alleges disability due to migraines, chronic rhinitis, major allergies, depression, and anxiety.  (AR 189.)  His application was denied both initially and on reconsideration, and he timely filed a request for hearing.  Administrative Law Judge (ALJ) Tracy LaChance conducted a hearing on October 24, 2019.  (AR 43.)  On December 26, 2019, the ALJ issued a decision finding that Plaintiff was not disabled under the Social Security Act from his alleged disability onset date through the date of the decision.  (AR 10–24.)  The Appeals Council denied Plaintiff's request for review on October 9, 2020, rendering the ALJ's decision the final decision of the Commissioner.  (AR 1–6.)  Having exhausted his administrative remedies, Plaintiff filed the Complaint in this action on December 1, 2020.  (Doc. 3.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims.  *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004).[3]  The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity."  20 C.F.R. § 416.920(b).  If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment."  20 C.F.R. § 416.920(c).  If the ALJ finds that the

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. § 416.920(d). The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity (RFC), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. § 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. § 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383, and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that, at step five, the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ LaChance first determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 16, 2018. (AR 12.) At step two, the ALJ found that Plaintiff had the following severe impairments: migraines, "sinus dysfunction following injury and reconstructive surgery," and depressive disorder. (*Id.*) At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a listed impairment. (*Id.*) In the "B" criteria of the mental health listings, the ALJ found that Plaintiff had (i) a mild limitation in understanding, remembering, or applying

information and in adapting or managing himself; and (ii) a moderate limitation in interacting with others and in concentrating, persisting, or maintaining pace. (AR 13–14.)

The ALJ next determined that Plaintiff had the RFC to perform "light work" with the following additional limitations:

> [H]e should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation; he is limited to a moderate noise environment, as defined by the Dictionary of Occupational Titles; and he should avoid even moderate exposure to hazards, such as unprotected heights and dangerous machinery. He is capable of performing simple, routine tasks with occasional interaction with the public and coworkers.

(AR 14.) Given this RFC, the ALJ found that Plaintiff was not capable of performing any of his past relevant work. (AR 22.) However, the ALJ determined that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform, including price marker, mail sorter, and collator operator. (AR 23.) Therefore, the ALJ concluded that Plaintiff had not been under a disability from the alleged onset date of April 16, 2018. (AR 24.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

In considering the Commissioner's disability decision, the Court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the .

5

. . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). The Court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" in the record supports the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). "Substantial evidence" is "more than a mere scintilla"; "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. The substantial evidence standard is "very deferential," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). Notwithstanding this deferential standard, the Court should bear in mind "that the Social Security Act is a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## **Analysis**

Plaintiff argues that the ALJ erred because (i) her "credibility[4] findings . . . are not supported by substantial evidence," and (ii) she "jumble[d] her credibility finding with a finding that Plaintiff has not followed prescribed treatment such that one cannot tell the true basis for her denial and whether it is supported by substantial evidence." (Doc. 20 at 2, 5.) The Commissioner responds that (i) "[s]ubstantial evidence supports the ALJ's finding that

---

[4] The Commissioner correctly notes that the Social Security Administration has "eliminat[ed] the use of the term 'credibility'" as applied to the review of claimants' subjective complaints. *See* SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017).

[Plaintiff]'s subjective complaints were not entirely consistent with the medical and other evidence"; and (ii) "[s]ubstantial evidence supports the ALJ's findings that Ms. Fleming's and Dr. Warnken's opinions were not persuasive because they were not well supported or consistent with the evidence." (Doc. 21 at 3, 10.)

Upon review of the record, the Court concludes that the ALJ applied the correct legal standards, and substantial evidence supports the decision. Accordingly, the Court affirms the Commissioner's decision.

I. **Substantial evidence supports the ALJ's assessment of Plaintiff's subjective complaints.**

Plaintiff argues that substantial evidence does not support the ALJ's findings regarding the consistency of his subjective complaints with other record evidence. (Doc. 20 at 5.) As the ALJ noted, Plaintiff "testified to significant environmental triggers for his migraines" and "serious migraine symptoms, including 18 headache days per month[,] each associated with violent vomiting." (AR 19.) After consideration of the record evidence, however, the ALJ determined that "these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (AR 16.) Substantial evidence supports this conclusion.

A. **Governing Law**

"When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account . . . ." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 416.929). Nevertheless, the ALJ "is not required to accept the claimant's subjective complaints without question." *Id.*; *Vilardi v. Astrue*, 447 F. App'x 271, 272 (2d Cir. 2012) ("[A] claimant's subjective report of [his] symptoms is not controlling but must be supported by medical evidence."). "If a claimant's subjective evidence of pain suggests a greater severity of impairment than can be demonstrated by objective evidence alone, regulations require

the ALJ to consider other evidence . . . ." *Reynard v. Colvin*, 220 F. Supp. 3d 529, 541 (D. Vt. 2016). Other evidence to be considered includes the following:

> (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain.

*Meadors v. Astrue*, 370 F. App'x 179, 184 n.1 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(c)(3)(i)–(vii)); *see* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). The ALJ's findings regarding a claimant's subjective symptoms "are entitled to great deference and therefore can be reversed only if they are 'patently unreasonable.'" *Pietrunti v. Dir., Off. of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) (quoting *Lennon v. Waterfront Transp.*, 20 F.3d 658, 661 (5th Cir. 1994)); *see Aponte v. Sec'y, Dep't of Health & Hum. Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) ("If the [Commissioner's] findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints . . . .").

### B.     Duration, Frequency, and Intensity of Plaintiff's Symptoms

Substantial evidence supports the ALJ's finding that Plaintiff's reported frequency of migraines and intensity of vomiting are inconsistent with the record. As the ALJ noted, Plaintiff reported that he has significant environmental triggers for migraines and that he experiences migraines up to 18 days each month. (AR 19.) However, his clinical presentation was consistently normal, without pain, distress, or neurological deficits. (*Id.*; *see* AR 318, 324, 330, 337, 343, 368–69, 373, 377, 383, 556–57, 631, 641); SSR 19-4p, 2019 WL 4169635, at *8 (Aug. 26, 2019) (explaining that, when assessing RFC for claimant with primary headache disorder as an impairment, "[c]onsistency and supportability between reported symptoms and objective

medical evidence is key"). The ALJ also observed that these migraines did not prevent Plaintiff from attending all scheduled medical appointments in the record. (AR 19.) And despite Plaintiff's reported migraine frequency, no evaluations or notes from the many appointments that he attended observed that he experienced a migraine during an appointment. (*See* AR 310–12, 316–45, 353–57, 365–85, 389–94, 397–401, 403–11, 439–44, 530–34, 547–58, 593–97, 607, 629–43); *see also Clarke v. Comm'r of Soc. Sec.*, No. 19-CV-7213 (BCM), 2021 WL 2481909, at *20 (S.D.N.Y. June 16, 2021) (finding subjective complaints of daily migraines to be inconsistent with the record when "[plaintiff] was not in any 'acute distress' at any of the dozens of medical appointments and examinations documented in the administrative record" and there was not "any suggestion, in the record, that she had to cancel appointments due to migraines").

The ALJ also noted that the alleged frequency of migraines since the 2004 car accident was inconsistent with Plaintiff's physical therapy notes. (AR 19.) The record confirms this assessment: while Plaintiff claimed his headaches increased from two per month prior to 2004 to at least three per week thereafter (AR 213), physical-therapy notes showed significant improvement in his migraines for a time, decreasing from "one at least every other day" to "only one . . . in 7 days" by December 10, 2008 (AR 508). Plaintiff then reported he had "[n]o migraines" as of December 31, 2008 and April 1, 2009. (AR 506, 509, 513.)

Plaintiff contends that records from the period before the alleged onset date would be relevant to his disability determination only if cited to show that physical therapy could improve his symptoms. (Doc. 20 at 6.) However, the ALJ relied on these records to illustrate an inconsistency between Plaintiff's statements about the migraines' frequency, rather than to show that his symptoms were amenable to improvement. *See* 20 C.F.R. § 404.1529(c)(3)(ii); *Rye v. Colvin*, Civil Action No. 2:14-CV-170, 2016 WL 632242, at *12 (D. Vt. Feb. 17, 2016) (in

assessing claimant's subjective symptoms, ALJ properly considered claimant's "reports regarding her headache frequency [that] have not been consistent"). According to Plaintiff, "he has not alleged or testified that his symptoms and limitations have always remained the same," but rather that his headaches decreased from 15 per month right after the accident to 12 per month. (Doc. 20 at 5–6.) But this has no bearing on the ALJ's finding that the alleged "level of severity" of Plaintiff's migraines did not always remain the same. (AR 19.) Of note, Plaintiff experienced "no reported migraines" for a period of months (AR 506, 509, 513), in contrast to his claim that he has consistently had at least 12 per month since 2004. (AR 557.)

Additionally, the ALJ reasonably found Plaintiff's claim that he vomits for hours without migraine medication to be inconsistent with medical records showing no evidence of electrolyte deficiency or decreased weight. (AR 19, 225; *see* AR 532 (reporting to physician that he experiences "violent vomiting" that "does not stop" and that he dry heaves until he "passes out").) Plaintiff argues that vomiting was never a consistent symptom that would produce noticeable changes in his electrolyte levels or his weight. (Doc. 20 at 6–7.) However, it was not "patently unreasonable" for the ALJ to question Plaintiff's subjective complaints based on an inconsistency between his claims of violent vomiting and the lack of other evidence substantiating the effects of such symptoms. *Pietrunti*, 119 F.3d at 1042; *see Hackman v. Comm'r of Soc. Sec.*, No. 17-CV-6541P, 2018 WL 4354208, at *3 (W.D.N.Y. Sept. 12, 2018) (upholding ALJ's finding regarding "frequency and severity" of claimant's vomiting episodes when ALJ's support included the claimant's "essentially normal imaging, laboratory results, and biopsies").

Substantial evidence supports the ALJ's finding that Plaintiff's subjective complaints regarding his migraines are inconsistent with the duration, frequency, and intensity of his symptoms.

### C. Plaintiff's Activities of Daily Living

Substantial evidence also supports the ALJ's finding that Plaintiff's symptoms were inconsistent with his daily activities. As the ALJ observed, despite his "alleged environmental restrictions and migraine triggers"—including pollen, dust, and weather changes—Plaintiff regularly uses his bike for transportation. (AR 19.) Plaintiff notes that a bicycle is a mode of transportation that may be "more consistent with his impairments" than other modes of transportation (Doc. 20 at 6). The fact remains, however, that Plaintiff was able to ride his bike "[d]aily" (AR 218), even though he asserted that environmental stimuli triggered migraines. The ALJ's finding of inconsistency in this regard is not unreasonable. *See Coger v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 427, 436 (W.D.N.Y. 2018) ("In considering activities of daily living, '[t]he issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence.'" (quoting *Morris v. Comm'r of Soc. Sec.*, No. 5:12-CV-1795 MAD/CFH, 2014 WL 1451996, at *6 (N.D.N.Y. Apr. 14, 2014))).

The ALJ also noted that although Plaintiff claimed a need to plug his nose with wet balls of toilet paper to block the effects of environmental triggers, no medical provider observed Plaintiff doing so. (AR 19.) Plaintiff contests this finding because "there is no evidence that any of his medical providers ever watched Plaintiff riding his bicycle." (Doc. 20 at 6). He testified, however, that he had to "pack his nose" with toilet paper anytime he left his bedroom or went

11

outside (AR 60, 61), not only when he rode his bicycle. The ALJ reasonably found that the absence of documentation of such preventive measures at his numerous medical appointments was inconsistent with his reported environmental sensitivity. *See Perozzi v. Berryhill*, 287 F. Supp. 3d 471, 492 (S.D.N.Y. 2018) ("An ALJ has discretion to resolve conflicts in the record, including with reference to a claimant's reported activities of daily living . . . .").

Further, the ALJ reasonably concluded that Plaintiff's ability to "work out for two hours at a time at the gym" was inconsistent with "his alleged environmental restrictions and migraine triggers." (AR 19.) Plaintiff emphasizes that his doctors recommended that he exercise. Nevertheless, his exercise regimen suggested that he was able to function in a gym for hours, notwithstanding his assertion that his migraines were the result of his heightened sensitivity to environmental stimuli. Although Plaintiff notes that there have been times when environmental factors prevented him from working out at the gym, he noted in both his original and updated Function Reports that he nevertheless works out at the gym three times a week. (AR 219, 245.)

Substantial evidence supports the ALJ's finding that the daily activities documented in the record do not corroborate the alleged severity of Plaintiff's environmental triggers.

    **D.**    **Medication and Treatment to Relieve or Alleviate Symptoms**

Plaintiff challenges the ALJ's consideration of Plaintiff's failure "to follow treatment recommendations of specialists regarding his migraines" in evaluating his subjective complaints. (AR 19.) As noted above, when evaluating symptoms that do not appear to be supported by objective medical evidence, the ALJ must review the type, dosage, effectiveness, and side effects of medication; treatment other than medication; and any measures used to relieve symptoms. 20 C.F.R. § 416.929(c)(3)(iv)–(vi). "[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the

individual fails to follow prescribed treatment that might improve symptoms, [the ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." SSR 16-3p, 2017 WL 5180304, at *9; *see Calabrese v. Astrue*, 358 F. App'x 274, 277–78 (2d Cir. 2009) (holding that ALJ reasonably found reported symptoms less severe than alleged where claimant did not take prescribed medication); *Stuart R. v. Saul*, Case No. 2:17-cv-00225, 2020 WL 1060952, at *12 (D. Vt. Mar. 5, 2020) (upholding ALJ decision discounting claimant's subjective complaints where medical records showed he was frequently noncompliant with treatment, which providers found likely affected his symptoms).

Substantial evidence supports the ALJ's assessment of Plaintiff's reported symptoms under the treatment-related factors noted above. First, the ALJ reasonably concluded that Plaintiff failed to reduce his use of the drug Zomig,[5] despite doctors noting that it could be contributing to the frequency of his headaches. (AR 19.) During his first visit in June 2018 with neurologist Robert E. Shapiro, M.D., Plaintiff reported taking Zomig three times a week, or twelve days a month. (AR 570.) Dr. Shapiro "urged him to reduce his use of Zomig" out of concern for "medication overuse headache." (AR 557.) The next month, however, Plaintiff twice reported he continued to take Zomig three times a week. (AR 224, 381.) When Plaintiff told Dr. Shapiro in August 2018 that he was taking two or three Zomig for each migraine, Dr. Shapiro again advised Plaintiff to reduce his Zomig intake to no more than eight days per month. (AR 353.) Notwithstanding Dr. Shapiro's admonitions to moderate his use of the drug, Plaintiff testified in October 2019 that the twelve Zomig doses that he received were insufficient

---

[5] *See* Med. Proof of Soc. Sec. Disab. 2d app. III, Westlaw (database updated March 2022) (describing "Zomig (zolmitriptan)" as one of several "[s]pecific migraine medications [that] work by constricting blood vessels" since "[m]igraine headaches are caused by an over-filling (dilation) of blood vessels in the head"); *see id.* app. XIII (listing Zomig as a common prescription drug used "to treat acute migraine attacks").

13

to get him through the month.  (AR 65.)  While Plaintiff observes that Dr. Shapiro's treatment notes after June 2018 do not mention overuse headaches (Doc. 20 at 8; *compare* AR 557 *with* AR 552, 600–01), given the treatment history with Dr. Shapiro cited above and Plaintiff's testimony, the ALJ reasonably concluded that Plaintiff did not reduce his Zomig use.  *See Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) (holding that it is the Commissioner's responsibility to "resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant").

Plaintiff also challenges the ALJ's reliance on Plaintiff's failure to follow his specialists' suggested treatment in the assessment of his subjective complaints.  (AR 19.)  During Plaintiff's first visit with Dr. Shaprio in June 2018, Dr. Shapiro stated that there were "a number of other potential therapies that could be considered" for which "[Plaintiff] has not had trials" (including "Botox for chronic migraine . . . , amlodipine off-label, candesartan off-label, and potentially Aimovig").  (AR 557.)  After Plaintiff unsuccessfully tried a prescription medication to prevent migraines (AR 547), Dr. Shapiro recommended that he try several antagonist[6] prescriptions (AR 548).  Plaintiff, however, was "not interested" in these suggestions.  (*Id.*)  In a letter to Plaintiff, the Department of Vermont Health Access also proposed that he try taking less triptan medication[7] such as Zomig—or those designed for treatment of symptoms—and instead consider medication designed to prevent those symptoms altogether.  (AR 605.)  Nonetheless, the record indicates that Plaintiff has not reduced his Zomig prescription.  And while Plaintiff initially trialed several preventative drugs (AR 552), he then "deferred adding another preventive

---

[6] *See* Stedmans Medical Dictionary 45560 (28th ed. 2006) (Westlaw) (defining "antagonist" as "[s]omething opposing or resisting the action of another; certain structures, agents, diseases, or physiologic processes that tend to neutralize or impede the action or effect of others").

[7] *See* Merritt's Neurology, 13th Ed. CH54 (defining "triptans" as medication, including zolmitriptan, that are used for acute treatment of migraines).

14

medication for [his] repeated migraine attacks" (AR 547–48). No further preventative-drug trials appear in the record thereafter. Otolaryngologist Carolyn A. Orgain, M.D. also "[d]iscussed neurogenic rhinitis with the patient," but she noted that Plaintiff was "very resistant to any idea that his nasal symptoms could be from anything but as a result of his prior surgery" and that "[h]e declined all discussion regarding treatment." (AR 394 (emphasis omitted).)

The ALJ appropriately considered the regulatory factors in finding that Plaintiff's complaints about the limiting effects of his migraines were not consistent with the record evidence. The Court cannot conclude that the ALJ's conclusions on this issue are patently unreasonable.

**II.     Substantial evidence supports the ALJ's conclusion that the opinions of Drs. Warnken and Fleming are not persuasive.**

In reviewing medical opinions, the ALJ must "articulate . . . how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record." 20 C.F.R. § 416.920c(b).[8] The "most important factors" to be considered when evaluating the persuasiveness of medical opinions and prior administrative medical findings are "supportability" and "consistency." *Id.* § 416.920c(a). "Supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.*

---

[8] For applications filed before March 27, 2017, the "treating physician rule" applies. The rule mandates that the ALJ assign "controlling weight" to a "well-supported" treating source's medical opinions that are "not inconsistent with the other substantial evidence." 20 C.F.R. § 416.927(c)(2). If controlling weight is not afforded to these opinions, the ALJ must apply certain enumerated "factors" in determining what weight to afford them. *Id.*; *see Schisler v. Sullivan*, 3 F.3d 563, 567–69 (2d Cir. 1993); *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004). Because Plaintiff filed his application after March 27, 2017, the Commissioner's new regulations apply. These regulations provide that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.920c(a).

15

§ 416.920c(c)(1). "Consistency" means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(2). The ALJ must explain how she "considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in her decision. *Id.* § 416.920c(b)(2). In addition, the ALJ "may, but [is] not required to," explain how she considered the following factors, *id.*: (1) the medical source's relationship with the claimant, including the length of the relationship and the frequency of examination, (2) the medical source's area of specialization, and (3) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding," *id.* § 416.920c(c)(3)–(5). Where the ALJ has found two or more medical opinions to be "[e]qually persuasive" (meaning "equally well-supported . . . and consistent with the record"), but "not exactly the same," the ALJ "will articulate" how she considered these latter three factors. *Id.* § 416.920c(b)(3).

In a July 2018 letter, Dr. Fleming supported Plaintiff's disability application. (AR 305). Dr. Fleming opined: "Timothy not only cannot do his career job, he can hardly be in the world due to his sensitivity to the environment that is organic due to the damage to his nasal passages." (*Id*). The ALJ considered Dr. Fleming's opinion unpersuasive because it was based on Plaintiff's self-reports, and unsupported by objective findings. (AR 21.) To be sure, "a patient's report of complaints, or history, is an essential diagnostic tool." *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003) (quoting *Flanery v. Chater*, 112 F.3d 346, 350 (8th Cir. 1997)). Nevertheless, an ALJ may properly consider the extent to which the opinion is based on the claimant's self-reports and whether the opinion is consistent with the other record evidence. *See*

16

*Albert S. v. Comm'r of Soc. Sec.*, Civil Action No. 2:18-cv-21-jmc, 2018 WL 5962472, at *8 (D. Vt. Nov. 14, 2018) ("The ALJ's consideration of this evidence, in conjunction with his evaluation of the opinions of Plaintiff's treating providers . . . was proper because where, as here, a treating provider's opinions are largely based on a claimant's own subjective reporting, it is appropriate to give less weight to those opinions if the claimant has been . . . not fully compliant with treatment recommendations."). In assessing the opinion's value, the ALJ properly determined that, when considered in conjunction with the other record evidence, Dr. Fleming's opinion was not persuasive because it appeared to be based only on Plaintiff's subjective complaints. The ALJ's related discussion of Plaintiff's failure to follow "treatment protocol" (AR 21)—which, as discussed above, undermined his subjective complaints—was therefore appropriate.

In finding Dr. Warnken's opinion unpersuasive, the ALJ noted Plaintiff's failure to follow treatment recommendations. Specifically, the ALJ correctly observed that Dr. Warnken's opinion referenced Plaintiff's consultations with headache and allergy specialists, but did not consider that those specialists noted Plaintiff's failure to follow their treatment recommendations, including decreasing his use of Zomig to prevent overuse headaches and trying alternative treatment modalities. (AR 21.) As discussed above, substantial evidence supports the ALJ's conclusion that Plaintiff's symptoms do not impose the alleged limitations, given Plaintiff's failure to follow treatment recommendations, coupled with other record evidence above indicating a less limited functional capacity. The ALJ thus reasonably accorded Dr. Warnken's opinion less value as inconsistent with the record, based in part on Plaintiff's failure to follow treatment.

In evaluating the persuasiveness of the treating providers' opinions, the ALJ's consideration of Plaintiff's failure to follow treatment recommendations was not erroneous.

### III. The ALJ did not deny Plaintiff benefits based solely on his failure to follow prescribed treatment.

Plaintiff argues that the ALJ did not adequately develop the record to support a finding that Plaintiff could control his migraines by following prescribed treatment. (Doc. 20 at 9.) An ALJ may find that a claimant is not disabled because they failed to follow prescribed treatment. *See* 20 C.F.R. § 416.930(b). However, "[the ALJ] will determine whether an individual has failed to follow prescribed treatment only if all three of the following conditions exist":

> 1. The individual *would otherwise be entitled to benefits based on disability* or eligible for blindness benefits under titles II or XVI of the Act;
>
> 2. We have evidence that an individual's own medical source(s) prescribed treatment for the medically determinable impairment(s) upon which the disability finding is based; and
>
> 3. We have evidence that the individual did not follow the prescribed treatment. *If all three conditions exist*, we will determine whether the individual failed to follow prescribed treatment . . . .

SSR 18-3p, 2018 WL 4945641, at *2–3 (Oct. 2, 2018) (emphases added). The ALJ did not make the threshold finding that Plaintiff would otherwise be disabled but for the failure to follow prescribed treatment. *Dennis Cordelle B. v. Saul*, Case No. 20-CV-0515 (NEB/HB), 2021 WL 1321355, at *6 (D. Minn. Jan. 28, 2021) ("Because the ALJ did not find that Plaintiff would be entitled to disability benefits but for his noncompliance with medication, SSR 18-3p does not apply."), *report and recommendation adopted sub nom. Dennis B. v. Saul*, 2021 WL 1138304 (D. Minn. Mar. 25, 2021); *Marilyn G.D. v. Comm'r of Soc. Sec.*, Civ. No. 21-00494 (KM), 2022 WL 855684, at *8 (D.N.J. Mar. 22, 2022) (collecting cases). Rather, as discussed above, the ALJ found that Plaintiff was not disabled because his subjective complaints were inconsistent

with the record, and the doctors' opinions that imposed limitations based on those complaints were unsupported.

As discussed, Plaintiff's failure to follow treatment was one of several grounds the ALJ relied on to assess Plaintiff's reported complaints. It is clear from the ALJ's decision that she was not conducting the formal analysis under SSR 18-3p to find Plaintiff not disabled based on a failure to follow prescribed treatment. Therefore, Plaintiff's argument that the ALJ failed to adequately develop the record on this issue lacks merit.

## Conclusion

For these reasons, Plaintiff's Motion (Doc. 20) is DENIED, and the Commissioner's Motion (Doc. 21) is GRANTED.

Dated at Burlington, in the District of Vermont, this 23rd day of November 2022.

/s/ Kevin J. Doyle
Kevin J. Doyle
United States Magistrate Judge